UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIAS ARIANAS,

    Plaintiff,

vs.                                                            Case No. 8:14-cv-01531-T-27EAJ

LVNV FUNDING LLC.,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion for Final Summary Judgment (Dkt. 55). Plaintiff responded in opposition (Dkt. 81), and Defendant was granted leave to file a reply (Dkt. 86). Upon consideration, the motion is **GRANTED**, because the undisputed facts demonstrate that Defendant conducted a reasonable investigation of Plaintiff's dispute, as required by the Fair Credit Reporting Act, and Defendant's communications with Plaintiff were not harassing, abusive, or based on actual knowledge of an illegitimate debt.

### BACKGROUND

In February 2008, Plaintiff Elias Arianas opened a credit card account with Washington Mutual, with an account number ending in -4931. (Dkt. 20 ¶ 9). Arianas incurred charges of approximately $1200 on the account. (*Id.* ¶ 10) Arianas alleges that he settled the account with Washington Mutual, paying a smaller amount than was due, but acknowledged he has no evidence of the settlement. (*Id.*; Dkt. 56-1 at 16:5-22). Chase Bank, USA later purchased Washington Mutual and assumed ownership of Arianas' account. (Dkt. 20 ¶ 11-12). Arianas alleges he asked Chase to

1

close the account and he never received a monthly or annual statement from Chase regarding the account. (*Id.* ¶ 12). Chase later sold the account to Credit Max LLC,[1] which transferred it, perhaps indirectly, to Arrow Financial. (Dkt. 85 ¶ 16). In September 2011, Defendant LVNV Funding LLC acquired the -4931 account from Arrow Financial. (*Id.* ¶ 17-19; Dkt. 20 ¶ 16).

In 2008, Arianas opened a line of credit with GE Money Bank, with an account number ending in -4612. (Dkt. 20 ¶ 14). Arianas used the line of credit to purchase four automobile tires, and stated he paid off the account in full in 2008 by hand delivering a money order to the store where he purchased the tires. (*Id.* ¶¶ 14-15). Arianas admitted he has no evidence he settled the -4612 account. (Dkt. 56-1 at 18:18-19:19). Arrow acquired the -4612 account in December 2008, and in September 2011, it sold the account to LVNV. (Dkt. 20 ¶ 16; Dkt. 85 ¶¶ 12-14).

Sometime after LVNV acquired the accounts, Resurgent Capital Services, LP began reporting both the -4931 and -4612 accounts to the credit reporting agencies. Resurgent managed accounts owned by LVNV, including both of Arianas' accounts. (Dkt. 85 ¶¶ 7-8). Arianas alleges that Resurgent's reports to the credit reporting agencies appeared on his credit reports as if he had reopened the accounts in September 2011. (Dkt. 20 ¶¶ 17, 28, 32, 35-39). In response to these reports, Arianas called LVNV and said he had paid off the accounts in question. (Dkt. 84-1 at 126:12-127:14; 192:7-194:13). LVNV/Resurgent asked for "any document or any details" to substantiate his claim, but Arianas did not provide any. (*Id.*) Arianas also hired a credit repair company, Lexington Law, and sent numerous disputes to the credit reporting agencies. (Dkt. 20 ¶¶

---

[1] In one paragraph of an affidavit, LVNV identified the original owner of the account as Credit Max, not Washington Mutual. (Dkt. 55-1 ¶ 17). Arianas claims this misstatement was made in bad faith and should be subject to sanctions. However, the context of the misstatement supports LVNV's argument the statement was a scrivener's error. Moreover, LVNV revised the affidavit to state the correct account owner, so there has been no prejudice to Arianas. (Dkt. 85 ¶ 17).

43-44). From April 2013 to June 2013, LVNV received three Automated Credit Dispute Verifications ("ACDV") on each account, a total of six ACDVs from the credit reporting agencies. (Dkt. 85 ¶¶ 20-25). These ACDVs stated Arianas' personal information, information about the accounts, and two types of dispute codes: "105: Disputes Date of Last Payment/Date Opened/Date of First Delinquency/Date Closed. Verify all dates[,]" and "112: Consumer states inaccurate information. Provide or confirm complete ID and account information." (Dkt. 85 Ex. C and D). In response to these disputes, Resurgent reviewed the electronic business records regarding the accounts it had received from Arrow, the previous owner of the accounts. (*Id.* ¶ 32 and Ex. A (electronic data for both accounts)). For each dispute, Resurgent verified the relevant dates and account information, and responded to the originating credit reporting agency. (*Id.* ¶¶ 22-24, 32).

On June 26, 2013, Arianas sent letters to LVNV asking it to provide "formal verification" that the -4931 and -4612 accounts were "established legally." (Dkt. 20-8). Resurgent replied on July 8, 2013, explaining it "manages the [-4612] account for LVNV . . . and has initiated a review of the inquiry we recently received." (Dkt. 85 Ex. F at pp. 1-2). The letter, sent by Resurgent's Customer Service Department, also stated, "Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. . . . This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector." (*Id.*) On January 14, 2014, Resurgent mailed a letter to Arianas regarding the -4931 account. (Dkt. 20-4 at pp. 1-5). The letter stated that Resurgent had received an inquiry regarding the account and it enclosed a October 2008 statement on the account from Washington Mutual, which showed a balance of $1,735.70. (*Id.*) The letter also stated the original creditor was Washington Mutual, the current owner was LVNV, and the current balance was

$1,941.60. (*Id.* at p. 1). The letter also stated: "Should you desire to pay off the account in full, you should contact us . . . to determine the payoff balance. . . . This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it. If you do not pay the debt, LVNV Funding LLC may report or continue to report it to the credit reporting agencies as unpaid." (*Id.*) Another letter from Resurgent to Arianas was sent the same day. (*Id.* at p. 6). It included the same information regarding the ownership of the account and the balance due, and also included the following text: "Resurgent . . . manages the above referenced account for LVNV . . . and has initiated a review of the inquiry. . . . Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. . . . This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector." (*Id.*)

On February 3, 2014, Resurgent again wrote Arianas, enclosing an "Account Summary" which it claimed "provides verification of the debt" for the -4931 account. (Dkt. 20-4 at pp. 7-8). The letter again stated, "This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector." (*Id.*) Four days letter, Resurgent sent another letter to Arianas regarding the -4931 account, which stated after a review of his inquiry, "the information provided, along with our review of the account, is insufficient to support your claim. We have not been able to contact you to discuss this claim. If you wish us to further investigate your dispute, please contact us . . . . If we do not receive additional information on this account, we may resume collection efforts." (*Id.* at pp. 9). Finally, the letter stated, "This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt

collector." (*Id.*) Arianas also received a similar letter from Resurgent, dated February 1, 2014, regarding the -4612 account, which also stated the information he had provided was "insufficient to support your claim." (Dkt. 20-5). Resurgent attempted to call Arianas at least four times regarding his disputes, but the calls were never answered. (Dkt. 85 ¶ 40; Dkt. 75 at p. 6).

After this lawsuit was filed, the credit reporting agencies filed six additional ACDVs, three for each account. (Dkt. 85 ¶¶ 26-27). These ACDVs contained the following language: "109: Disputes Current Balance - Verify Original Loan Amount, Scheduled Monthly Payment Amount, Actual Payment Amount, Amount Past Due, Current Balance, and Original Charge Off Amount[,]" and "012: Claims paid the original creditor before collection status or paid before charge-off. Verify Account Status, Payment Rating, Current Balance, Amount Past Due and Payment History Profile." (Dkt. 85 Ex. C at pp. 52, Ex. D. at pp. 63-65). After receiving these disputes, LVNV ceased reporting these accounts to the credit reporting agencies. (*Id.* ¶¶ 29-30).

## STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress*

& Co., 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff's evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 249.

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## DISCUSSION

Arianas brings two claims against LVNV.[2] One claim is based on the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the other is based on the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*

### *FCRA Claim*

The FCRA creates a private right of action against furnishers of information to credit reporting agencies. *See Green v. RBS Nat. Bank*, 288 Fed. App'x 641, 642 (11th Cir. 2008); 15 U.S.C. § 1681s-2(b)(1). If a furnisher receives notice of a customer's dispute from a credit reporting agency, the furnisher is required to conduct "a reasonable investigation of their records to determine

---

[2] LVNV argues it is entitled to summary judgment on both claims because Resurgent, not LVNV, engaged in the conduct in question. However, this question need not be reached, because as discussed below, LVNV is entitled to summary judgment even if it could be held liable for Resurgent's actions regarding the FCRA and FCCPA.

whether the disputed information can be verified." *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991), which interpreted an analogous statute to require "reasonable investigation" by creditors); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155 (9th Cir. 2009) (adopting Fourth Circuit's holding in *Johnson*); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (same); *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012). It is the plaintiff's burden to show that the investigation was not reasonable, and that there was a causal relationship between the unreasonable investigation and the failure to discover inaccuracies in the plaintiff's account. *Gorman*, 584 F.3d at 1156-57. *See Chiang*, 595 F.3d at 37-38 ("a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions.") (emphasis original). The requirement of a reasonable investigation is "procedural," and "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gorman*, 584 F.3d at 1161. Because LVNV conducted a reasonable investigation of its records after receiving notice of the dispute, summary judgment is due to be granted on the FCRA claim.

Arianas makes several arguments related to the FCRA claim. First, he argues that LVNV's request that the credit reporting agencies delete accounts based on post-suit disputes meant that LVNV should have done the same based on disputes filed before the lawsuit. Next, he argues LVNV failed to verify the accuracy of the disputed information, and that LVNV lacked sufficient information regarding the accounts to report them to the credit reporting agencies. Finally, he states that he told LVNV he had paid the debts, and therefore it should have ceased its reporting. None of these arguments are availing.

First, it was reasonable for LVNV to request deletion of the accounts based on the post-suit ACDVs, even though it did not cease reporting based on the pre-suit ACDVs. The pre-suit ACDVs contained two types of dispute codes: "105: Disputes Date of Last Payment/Date Opened/Date of First Delinquency/Date Closed. Verify all dates[,]" and "112: Consumer states inaccurate information. Provide or confirm complete ID and account information." (Dkt. 85 Ex. C and D). Based on these codes, Resurgent investigated and confirmed the dates and information relating to the GE and WAMU accounts contained in its internal records, and promptly reported the results of its investigation to the originator of the ACDV. (Dkt. 85 ¶¶ 22-25, 31-32). Notably, the pre-suit disputes did not include any documentation that suggested Arianas had paid off the accounts.[3] *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) ("requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA. As such, the fact that [the furnisher] did not contact [the plaintiff] does not make their investigation unreasonable.").

Unlike the pre-suit ACDVs, the post-suit disputes included a claim that Arianas had paid off the accounts. (*See* Dkt. 85 Ex. C at pp. 52, Ex. D. at pp. 63-65 ("109: Disputes Current Balance - Verify Original Loan Amount, Scheduled Monthly Payment Amount, Actual Payment Amount, Amount Past Due, Current Balance, and Original Charge Off Amount[,]" and "012: Claims paid the original creditor before collection status or paid before charge-off. Verify Account Status, Payment Rating, Current Balance, Amount Past Due and Payment History Profile."). LVNV's decision to

---

[3] To the extent Arianas's claim is based on the insufficiency of the dispute description, that claim is properly directed at the credit reporting agency, not the furnisher. *See Stroud v. Bank of America*, 886 F. Supp. 2d 1308, 1316 (S.D. Fla. 2012) ("the rule is that if a credit reporting agency relays an insufficient dispute description to an information furnisher, then an individual may instead simply have a cause of action against the credit reporting agency") (citing *Chiang*, 595 F.3d at 38).

8

request deletion of these accounts, in light of the fact they were filed after the lawsuit began and the claim that the debts had been paid, was reasonable in light of the circumstances, and it does not undermine the reasonableness of its prior actions. *See Chiang*, 595 F.3d at 38 ("[W]hat is a reasonable investigation by a furnisher may vary depending on the circumstances. For instance, a more limited investigation may be appropriate when [the ACDV is] vague or cursory . . . . [T]he central inquiry . . . is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the [ACDV].").

Next, Arianas argues that LVNV failed to verify the accuracy of the information in its records, and lacked sufficient information to report to the credit reporting agencies. But LVNV relied on the same information the originators of the loans had, which had been transferred in electronic form to LVNV/Resurgent. (Dkt. 84-1 at 51:14-52:6, 194:14-196:2, 197:7-198:19). Arianas is unable to muster any evidence that the electronic information in the records was unreliable. His unsupported assertion that he paid the debt, without any documentary support, does not cast doubt on LVNV's reasonableness in relying on and reporting the information in the electronic records. *See Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1314 (S.D. Fla. 2012) (granting summary judgment on FCRA claim against furnisher because "[plaintiff] has failed to provide any *evidence*, as opposed to merely his own allegations or hunches or theories, that the investigation was unreasonable or that [the furnisher] reported any inaccurate information.")[4]

---

[4] Arianas cites to *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004) for support, but the case does not support his position. Plaintiff appears to claim that once he said he paid off the debt, LVNV should have accepted his word. However, *Johnson* only requires the furnisher, LVNV, to conduct a reasonable investigation, as it did. *Id.* at 431. *See Gorman*, 584 F.3d at 1160-61 (explaining *Johnson* "recognized that the reasonableness of an investigation depends on the facts of the particular case, most importantly the . . .description of the dispute in [the ACDV].").

9

Finally, Arianas states that he told LVNV he had paid off the debts in question, and therefore LVNV should have stopped reporting them to the credit reporting agencies. Although Arianas told LVNV that he had paid off the debts, (Dkt. 56-1 at 15:6-11, 18:18-21; Dkt. 84-1 at 126:12-128:3, 192:7-195:10), there is no evidence supporting that contention, other than Arianas' own statements. These statements do not create a dispute of material fact regarding the reasonableness of LVNV's investigation, which is the relevant inquiry. Despite requests from LVNV/Resurgent to provide evidence substantiating his claim that the debts had been paid off, Arianas never furnished any evidence beyond his statements. (Dkt. 56-1 at 16:5-13, 18:25-19:19; Dkt. 84-1 at 194:10-195:10). In sum, Arianas' unsupported assertion he paid off the debts does not undermine the reasonableness of LVNV's investigation, and therefore LVNV is entitled to summary judgment on the FCRA claim. *See Chiang*, 595 F.3d at 39-41 ("To the extent that [plaintiff's] argument reduces to the claim that any investigation that did not accept his allegations as accurate was by definition unreasonable, it fails.").

### *FCCPA Claim*

The FCCPA prohibits certain practices in the collection of consumer debts, including communications so frequent as to harass the debtor or other conduct that abuses or harasses the debtor, and attempts to enforce a debt which the collector knows to be illegitimate. *See* Fla. Stat. § 559.72(7), (9). In applying the FCCPA, "due consideration and great weight shall be given to the interpretations of the . . . federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). As explained in the order on the second motion to dismiss, threats to report

a debt to a credit reporting agency may violate the FCCPA, but the FCRA preempts the reach of the FCCPA to the actual reporting of a debt to a credit reporting agency. (*See* Dkt. 24).[5]

Resurgent sent six letters to Arianas and placed four unanswered telephone calls to him. Arianas contends the letters and telephone calls violated the FCCPA, because they were abusive and harassing and because LVNV knew the debts were illegitimate. Because the undisputed facts demonstrate that Resurgent and LVNV's communications were not harassing or abusive, were made in response to inquiries by Arianas, and that LVNV lacked actual knowledge that the debts were illegitimate, summary judgment is due to be granted on the FCCPA claim.

### § 559.72(7)

Fla. Stat. § 559.72(7) states, "In collecting consumer debts, no person shall . . . [w]illfully communicate with the debtor . . . with such frequency as can reasonably be expected to harass the debtor . . . , or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor . . . ." LVNV argues it did not violate § 559.72(7) because neither it nor Resurgent were attempting to collect a debt, and the number and manner of their communications with Arianas were not abusive or harassing as a matter of law.

LVNV is correct that all of the communications were made in response to Arianas' inquiries. (Dkt. 20 ¶¶ 48, 59; Dkt. 85 ¶ 39). Indeed, the "animating purpose" the communications was to respond to Arianas' disputes. *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (holding that in the FDCPA context, for statements sent by debt collector to debtor to be in collection of debt, "an animating purpose of the communication must be to induce payment by the

---

[5] Therefore, any claim based on the alleged opening and closing of the accounts on Arianas' credit reports must be based on the FCRA, not the FCCPA.

debtor."). However, the letters in question state that "If you do not pay the debt, LVNV Funding LLC may report or continue to report it to the credit reporting agencies as unpaid," "This is an attempt to collect a debt and any information obtained will be used for that purpose," and "If we do not receive additional information on this account, we may resume collection efforts." (Dkt. 20-4 at pp. 1, 6, 7, 9). A reasonable jury could find that the letters were sent in the course of "collecting debts." Fla. Stat. § 559.72. Material questions of fact preclude summary judgment on the basis that LVNV and Resurgent were not attempting to collect a debt.

Nevertheless, summary judgment is due to be granted on the § 559.72(7) claim, because the frequency and manner of the communications were not abusive or harassing as a matter of law. There is nothing in the letters that can be construed as abusive. *Cf. Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 512 (Fla. 1st DCA 2007) (denying summary judgment on § 559.72(7) claim because debt collector allegedly made "loud, aggressive . . . [statements on the telephone to debtor, including] "Do you know who you're dealing with here? Well, I'll tell you who you're dealing with. This is a multi-million dollar corporation ... They're going to embarrass you Bonnie. They're going to embarrass you real bad.""") Further, the animating purpose of the letters and unanswered telephone calls was to respond to Arianas' inquiries, not to harass. *See Grden*, 643 F.3d at 173. Nor was the frequency of the communications – six letters over the course of more than a year in response to inquiries and four unanswered calls – sufficient to be harassing. *See Desmond v. Accounts Receivable Mgmt., Inc.*, 72 So. 3d 179, 181 (Fla. 2d DCA 2011) (eighteen calls insufficient as matter of law to violate FCCPA); *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 5 (Fla. 4th DCA 2009) (seven calls insufficient as a matter of law to violate FCCPA).

## § 559.72(9)

Arianas' claim also implicates § 559.72(9), which states, "In collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." To avoid summary judgment, a "Plaintiff must prove . . . that Defendants had *actual knowledge* that their claim of a right to enforce the debt was [invalid.]" *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) (Whittemore, J.). *See Schauer*, 5 So. 3d at 5-6 ("The fact that plaintiff asserted, when he received telephone calls from [the debt collector] attempting to collect the debt, that he did not owe the debt, is insufficient, in our opinion, to create an issue of fact as to his claim that [the debt collector] knew that the debt was not legitimate. The statute does not provide for recovery if the creditor *merely should have known* the debt was not legitimate.") (emphasis added). Because Arianas is unable to show that LVNV had actual knowledge that the debts were illegitimate, his § 559.72(9) claim fails as a matter of law.

In *Schauer*, the debt collector received the underlying information from another party "with no reason to believe that this was not a legitimate debt." 5 So. 3d at 5. Plaintiff claimed his signature had been forged, but the court held this was insufficient to create an issue of fact as the debt collector's knowledge, in light of expert testimony that the plaintiff had signed the document in question. *Id.* Likewise, Arianas asserts here that he paid off the debts in question, but failed to provide any evidence supporting that claim to LVNV. Arianas also disputes the chain of title of the debt, but again, fails to provide any support for that claim. For its part, LVNV reasonably relied on the account information, including the chain of title, that was transferred electronically upon its purchase of the debts, as the debt collector did in *Schauer. Id.* (*See* Dkt. 85 ¶¶ 12-19). Accordingly,

Arianas has failed to demonstrate a dispute of material fact as to LVNV's actual knowledge of the illegitimacy of the debts, and LVNV is entitled to summary judgment on the § 559.72(9) claim.

## CONCLUSION

Defendant's Motion for Final Summary Judgment (Dkt. 55) is **GRANTED**. The Clerk is directed to enter final judgment for Defendant and **CLOSE** this case.

**DONE AND ORDERED** this 25th day of August, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record